[No. B153082. Second Dist., Div. Five. Mar. 25, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
CARNEY MORRIS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts C., D., E., and F.

**COUNSEL**

Leslie G. McMurray, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Marc E. Turchin and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.—**

### INTRODUCTION

Defendant and appellant Carney Morris appeals from a judgment sentencing him to two concurrent terms of 27 years to life in prison, imposed after a jury found him guilty of two felonies: evading a peace officer with willful disregard of the safety of persons or property, and possession of a firearm by a felon. Defendant contends that the trial court erred by denying his *Wheeler* motion[1] regarding the People's exercise of peremptory challenges; by failing to discharge the jury panel after finding merit in the People's *Wheeler*

---

[1] *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]. A *Wheeler* motion is brought during voir dire of a jury panel when a party asserts that the opposing party

motion; by instructing the jury with CALJIC No. 17.41.1 (reporting juror misconduct); by imposing two 1-year prior prison term enhancements to his sentence; and by computing his presentence custody credits under Penal Code section 2933.1, rather than under Penal Code section 4019. Defendant also contends that his sentence constitutes cruel and unusual punishment in violation of the federal Constitution and cruel or unusual punishment in violation of the state Constitution. The People concede that the trial court erred when it imposed two prior prison term enhancements and when it computed the presentence custody credits; accordingly, we strike one of the enhancements and modify the judgment to reflect a sentence of two concurrent terms of 26 years to life in prison, and we correct the presentence custody credit award to reflect a total credit of 229 days. We affirm the judgment as modified, and hold that (1) defendant waived any assertion of error with regard to his *Wheeler* motion because he failed to make an adequate record; (2) defendant does not have standing to assert any error regarding the denial of the People's *Wheeler* motion; (3) defendant failed to demonstrate error in the giving of CALJIC No. 17.41.1; and (4) defendant's sentence did not constitute cruel and unusual punishment under the federal Constitution or cruel or unusual punishment under the California Constitution in light of his recidivism.

## BACKGROUND

At 8:35 a.m. on June 28, 2000, Los Angeles Police Officer Thomas Escalera (Escalera) and his partner, Officer Luna, attempted a traffic stop on a sports utility vehicle driven by defendant. The officers, who were in a marked police car with its red lights flashing and its siren activated, followed defendant into a parking lot and saw him turn to look at the police car. Despite Escalera's repeated announcements over the police car's public address system to stop the vehicle, defendant sped away down Wilshire Boulevard. The officers followed defendant on a 6.9 mile high-speed chase through rush hour traffic on several major thoroughfares, until defendant crashed his vehicle into a lamppost. Along the way, defendant ran numerous red lights, forced cars to swerve out of his way, came within one to three feet of pedestrians in crosswalks, and narrowly missed hitting a motorcyclist. Police found a loaded .38-caliber handgun and two marijuana cigarettes on the driver's side floorboard in defendant's vehicle, and seven .38-caliber bullets in defendant's pocket.

Defendant was charged by information with three counts: count one, evading a peace officer with willful disregard of the safety of persons or

---

is improperly exercising peremptory challenges on the basis of group bias, i.e., to exclude members of a legally cognizable group.

property (Veh. Code, § 2800.2, subd. (a)); count two, possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)); and count three, possession of marijuana (Health & Saf. Code, § 11357, subd. (b)). The information also alleged for enhancement purposes that defendant had three prior convictions for serious or violent felonies (two convictions for attempted murder and one conviction for armed robbery) within the meaning of Penal Code sections 667, subdivisions (b) through (i), and 1170.12, subdivisions (a) through (d), and that defendant had two attempted murder convictions for which he served a prison term within the meaning of Penal Code section 667.5, subdivision (b).

The jury found defendant guilty on counts one and two, but was unable to reach a verdict on count three. The People moved to dismiss count three, and the motion was granted. After defendant waived his right to a jury trial on the prior conviction allegations, the trial court found those allegations to be true. For count one, the court sentenced defendant to 25 years to life in prison, plus one year for each of the prior attempted murder convictions under Penal Code section 667.5, subdivision (b), for a total of 27 years to life. The court imposed the same sentence for count two, to run concurrently with the sentence for count one. The court also found that defendant was entitled to presentence custody credit for 153 days of actual custody, plus 22 days of conduct credit, for a total credit of 175 days. Defendant filed a timely appeal from the judgment.

## DISCUSSION

### A. *Defendant's Wheeler Motion*

During jury voir dire, defendant made a *Wheeler* motion to dismiss the entire jury venire, asserting that the prosecutor had improperly exercised peremptory challenges against prospective jurors on the basis of their race. In support of the motion, defendant's counsel noted only that three of the jurors excused by the prosecutor were "Black" or "Hispanic." Counsel did not identify which of the six jurors the prosecutor excused were Black or Hispanic, and the record does not reveal the race of any of the excused jurors (although it appears that, at the time of the motion, there were still two Black females on the jury panel). The trial court did not ask the prosecutor to explain her reasons for exercising peremptory challenges against any of the excused jurors. Instead, the court found that there was no "reasonable basis for concluding that [the prosecutor's] challenges have been exercised on the basis of race," and denied defendant's motion. Defendant contends on appeal that the trial court's denial of his *Wheeler* motion was reversible error.

"It is well settled that the use of peremptory challenges to remove prospective jurors solely on the basis of a presumed group bias based on

membership in a racial group violates both the state and federal constitutions." *(People v. Turner* (1994) 8 Cal.4th 137, 164 [32 Cal.Rptr.2d 762, 878 P.2d 521], citing *People v. Wheeler, supra,* 22 Cal.3d at pp. 276-277; *Batson v. Kentucky* (1986) 476 U.S. 79, 89 [106 S.Ct. 1712, 1719, 90 L.Ed.2d 69] *(Batson)*; and *J.E.B. v. Alabama ex rel. T.B.* (1994) 511 U.S. 127, 128 [114 S.Ct. 1419, 1421, 128 L.Ed.2d 89].) In *Wheeler,* the California Supreme Court instructed that, "[i]f a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. First, . . . *he should make as complete a record of the circumstances as is feasible.* Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." *(Wheeler, supra,* 22 Cal.3d at p. 280, italics added, fn. omitted.)[2]

■ "[W]hen a trial court denies a *Wheeler* motion without finding a prima facie case of group bias the reviewing court considers the entire record of voir dire. [Citations.] As with other findings of fact, we examine the record for evidence to support the trial court's ruling. Because *Wheeler* motions call upon trial judges' personal observations, we view their rulings with 'considerable deference' on appeal. [Citations.] If the record 'suggests grounds upon which the prosecutor might reasonably have challenged' the jurors in question, we affirm. [Citation.]" *(People v. Howard* (1992) 1 Cal.4th 1132, 1155 [5 Cal.Rptr.2d 268, 824 P.2d 1315].)

■ In the present case, the record does not identify which of the prosecutor's six peremptory challenges were at issue in defendant's *Wheeler* motion; nor does the record indicate the race of any of the jurors. Without showing that there were no race-neutral grounds for challenging the Black and Hispanic jurors at issue in his *Wheeler* motion, defendant cannot demonstrate error; defendant must identify which of the challenged jurors were Black or Hispanic and must show that there were no race-neutral grounds for excluding them. Defendant argues, however, that the record is sufficient to demonstrate error because there could be no race-neutral rationale for *any* of the prosecutor's peremptory challenges except for one challenge. We disagree.

The record suggests race-neutral grounds upon which the prosecutor might have exercised some of her challenges. The brother of one of the

---

[2]The California Supreme Court has observed that "essentially the same standard applies" under either California law (i.e., *Wheeler*) or federal law (i.e., *Batson*). *(People v. Catlin* (2001) 26 Cal.4th 81, 117, fn. 4 [109 Cal.Rptr.2d 31, 26 P.3d 357].)

challenged jurors was a public defender, and the prosecutor might reasonably believe that he would be biased in favor of defendant or against the prosecution. The nephew of another challenged juror was incarcerated, and the prosecutor might reasonably be concerned that this would make her sympathetic towards defendant. A third challenged juror stated that her close friend was "murdered" by a prison guard, which suggests that she might be biased against peace officers (all of the prosecution witnesses were peace officers).

Because there were race-neutral grounds for challenging *some* of the jurors, defendant can demonstrate error only if he shows that *those* jurors were not the Black or Hispanic jurors who were the subject of his *Wheeler* motion. But defendant did not do that. He failed to make a record from which we can determine which of the challenged jurors were the subject of his motion. Given the requirement under *Wheeler* that the moving party make as complete a record as is feasible, a requirement with which defendant failed to comply, and the rules of appellate review that require appellants to demonstrate error, we hold that defendant waived any error regarding the denial of his *Wheeler* motion. (See, e.g., *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003 [87 Cal.Rptr.2d 90] [an error is waived if the record not sufficient to conduct appellate review].)

### B. *The People's Wheeler Motion*

At the same bench conference in which defendant made his *Wheeler* motion, the prosecutor also made a *Wheeler* motion based upon defendant's exercise of challenges against "White" males. The trial court denied the People's motion, and voir dire continued. After defendant exercised four more challenges, the prosecutor renewed the People's motion, arguing that defendant had excused all White males. The trial court agreed that the People had made a prima facie case of discrimination in defendant's exercise of his peremptory challenges, and asked defendant's counsel to explain his challenges. After considering defendant's counsel's response, the court found that defendant had exercised his challenges in a discriminatory fashion. But despite the prosecutor's statement that, having found such discrimination, the court was required to grant the People's motion, the court denied the motion in the interest of proceeding with the trial. On appeal, defendant contends that, once the trial court found that jurors were excused on the basis of group bias, the court was required to grant the People's motion and to dismiss the entire jury panel and venire and start voir dire with a new venire.

At the time of the trial in this case (October 2000), California law required the trial court to dismiss the entire jury panel and quash the

remaining venire whenever a party in a criminal case succeeded in showing that the opposing party had improperly exercised peremptory challenges to exclude members of a cognizable group. (*People v. Willis* (2002) 27 Cal.4th 811, 813 [118 Cal.Rptr.2d 301, 43 P.3d 130] (*Willis*); *People v. Wheeler*, *supra*, 22 Cal.3d at p. 282.) In 2002, the California Supreme Court revisited this *Wheeler* requirement in *Willis*, a case very much like the present case, with (as we discuss below) one significant distinction.

In *Willis*, the defendant systematically challenged all White males after he failed in his efforts at the outset of voir dire to have the entire venire dismissed as unrepresentative of the community. The prosecutor brought a *Wheeler* motion, and the trial court found that the defendant had improperly exercised his peremptory challenges to exclude White males. Unlike the prosecutor in this case, the prosecutor in *Willis* asked that the court not dismiss the jury panel (despite the requirement set forth in *Wheeler*), because that would accomplish the defendant's purpose of obtaining a new jury panel. The court agreed with the prosecutor and, rather than dismissing the panel, imposed (and later vacated) monetary sanctions against defense counsel. (*Willis*, *supra*, 27 Cal.4th at pp. 814-816.) On appeal, the defendant argued that the trial court had no discretion to impose any remedy short of dismissing the entire venire. The Court of Appeal reluctantly agreed that, under *Wheeler*, the trial court prejudicially erred in failing to quash the entire venire. Although the appellate court reversed the judgment and remanded the case for retrial, it called upon the California Supreme Court to reexamine its opinion in *Wheeler* as to the requirement that the venire be dismissed. (*Id.* at pp. 816-818.) The Supreme Court accepted the appellate court's suggestion.

The Supreme Court in *Willis* observed "that the *Wheeler* remedy of dismissal is not compelled by the federal Constitution," and noted that "[t]he present case vividly demonstrates the need for the availability of some discretionary remedy short of dismissal of the remaining jury venire." (*Willis*, *supra*, 27 Cal.4th at p. 818.) The court explained that to remedy the defendant's "improper course of conduct by dismissing the remaining venire not only would reward such conduct and encourage similar conduct in future cases, but also would frustrate the court's substantial and legitimate interest in the expeditious processing of cases for trial." (*Ibid.*) Therefore, the court held that the trial court has the discretion to impose an alternative remedy or sanction when the party bringing a *Wheeler* motion consents to a remedy short of dismissing the venire. (*Id.* at p. 824.) In reaching this holding, however, the court stressed the need for the moving party's consent to the alternative remedy or sanction: "We stress that such waiver or consent is a prerequisite to the use of such alternative remedies or sanctions, for *Wheeler* made clear that 'the complaining party is entitled to a random draw from an

entire venire' and that dismissal of the remaining venire is the appropriate remedy for a violation of that right. [Citation.] Thus, *trial courts lack discretion to impose alternative procedures in the absence of consent or waiver by the complaining party.*" (*Id.* at pp. 823-824, italics added.)

 In the present case, the prosecutor did not consent to the trial court's "alternative procedure" of admonishing defense counsel and continuing with jury selection from the original venire. In fact, the prosecutor told the court that it was required to dismiss the jury panel. Therefore, under *Willis*, the trial court did not have discretion to impose an alternate remedy for defendant's improper conduct. But *Willis* does not address whether a defendant who was found to have exercised improperly peremptory challenges can assert error on appeal if the trial court declines to dismiss the venire despite the prosecutor's failure to consent to an alternative remedy. That is the question presented in this case.

Defendant argues that he can assert the error on appeal because "both the prosecution and the defense are bound by the same Constitutional principles." Relying upon *People v. Tapia* (1994) 25 Cal.App.4th 984 [30 Cal.Rptr.2d 851] (*Tapia*), defendant notes that systematic exclusion of jurors who are members of a legally cognizable group harms not only the parties to the case, but also the excluded jurors and the community at large. Indeed, the appellate court in *Tapia* held that, because the improper exclusion of jurors harms the jurors and the community, a criminal defendant has standing under *Powers v. Ohio* (1991) 499 U.S. 400, 415 [111 S.Ct. 1364, 1373, 113 L.Ed.2d 411] (*Powers*) to raise the third party equal protection claims of excluded jurors even if the invited error doctrine might otherwise apply to preclude the defendant from raising the *Wheeler* error on appeal. (*Tapia, supra,* 25 Cal.App.4th at p. 1028 [noting that the United States Supreme Court has ruled that a criminal defendant has standing to raise excluded jurors' equal protection claims].) The *Tapia* court explained that "whether counsel knows it or not, when he rises to make a *Wheeler-Batson* objection during voir dire examination, he speaks not only on behalf of his client, but he speaks on behalf of those jurors who may be excluded from the jury for racial reasons as well as the community, if his objection is not resolved in the manner required by law." (*Id.* at p. 1029.) Therefore, the court concluded that the invited error doctrine does not preclude a defendant from asserting *Wheeler* error on appeal because the defendant is asserting the excluded jurors' constitutional claims. (*Ibid.* ["Although, an appellate court's finding of invited error arguably could be said to 'judicially' negate the harm caused to the defendant, it would leave unremedied the harm caused to the excluded jurors and to the community"].)

*Tapia* is distinguishable from the instant case. In the instant case, defendant "invited error" through his counsel's improper exercise of peremptory

challenges. In *Tapia*, on the other hand, the defendant brought a *Wheeler* motion based upon the *prosecutor's* purportedly improper peremptory challenges. According to the dissent in *Tapia*, the defendant "invited error" by misleading the trial court into believing that the court had considered the correct factors and applied the correct standard when denying the defendant's *Wheeler* motion, thereby allegedly aiding the trial court in its *Wheeler* error. (*Tapia, supra,* 25 Cal.App.4th at p. 1033 (dis. opn. of Buckley, J.).) The *Tapia* majority's conclusion that the defendant had standing to raise the excluded jurors' equal protection claims even if the defendant had "invited error" is consistent with *Powers* because the defendants in both cases challenged the *prosecutor's* peremptory challenges. *Powers* and its progeny (*Georgia v. McCollum* (1992) 505 U.S. 42 [112 S.Ct. 2348, 120 L.Ed.2d 33] (*McCollum*), discussed *post*) do not mandate the same result in this case.

In *Powers*, a White defendant asserted that the prosecutor improperly exercised peremptory challenges to systematically exclude Black venirepersons from the jury. The defendant argued on appeal that he had a right to object to the prosecutor's peremptory challenges even though he was not of the same race as the excluded jurors, but the Ohio Court of Appeals affirmed his conviction. (*Powers, supra,* 499 U.S. at p. 403 [111 S.Ct. at pp. 1366-1367].) The United States Supreme Court reversed. The court explained that a prosecutor cannot use peremptory challenges to exclude any jurors solely by reason of their race, because each juror has "the right not to be excluded from [a jury] on account of race." (*Id.* at p. 409 [111 S.Ct. at p. 1370].) In holding that the defendant had standing to raise those excluded jurors' equal protection claims, the court explained that a litigant may raise a claim on behalf of third parties "*provided three important criteria are satisfied*: The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute, [citation]; the litigant must have a close relation to the third party, [citation]; and there must exist some hindrance to the third party's ability to protect his or her own interests." (*Id.* at p. 411 [111 S.Ct. at pp. 1370-1371], italics added.)

Applying the three criteria to the case before it, the Supreme Court found that the first criterion was satisfied: "The purpose of the jury system is to impress upon the criminal defendant and the community as a whole that a verdict of conviction or acquittal is given in accordance with the law by persons who are fair. The verdict will not be accepted or understood in these terms if the jury is chosen by unlawful means at the outset. Upon these considerations, we find that a criminal defendant suffers a real injury when the prosecutor excludes jurors at his or her own trial on account of race." (*Powers, supra,* 499 U.S. at p. 413 [111 S.Ct. at p. 1372].) The court found that the second criterion was satisfied because "[b]oth the excluded juror and

the criminal defendant have a common interest in eliminating racial discrimination from the courtroom. . . . The rejected juror may lose confidence in the court and its verdicts, as may the defendant if his or her objections cannot be heard. This congruence of interests makes it necessary and appropriate for the defendant to raise the rights of the juror." (*Id.* at pp. 413-414 [111 S.Ct. at p. 1372].) Finally, the court found that the third criterion was satisfied because "[t]he barriers to a suit by an excluded juror are daunting." (*Id.* at p. 414 [111 S.Ct. at p. 1373].)

This same standing analysis was applied in *McCollum, supra,* 505 U.S. 42, in which the United States Supreme Court held that a state has standing to challenge a criminal defendant's discriminatory use of peremptory challenges. The court recognized that not only does a defendant suffer cognizable injury when a prosecutor improperly exercises peremptory challenges " 'because racial discrimination in the selection of jurors "casts doubt on the integrity of the judicial process," and places the fairness of a criminal proceeding in doubt,' " but that "a State suffers a similar injury when the fairness and integrity of its own judicial process is undermined." (*McCollum, supra,* 505 U.S. at p. 56 [112 S.Ct. at p. 2357].) The court also found that the second criterion set forth in *Powers* was satisfied because, "[a]s the representative of all its citizens, the State is the logical and proper party to assert the invasion of the constitutional rights of the excluded jurors in a criminal trial." (*Ibid.*) Finally, the court found that the barriers to a suit by an excluded juror "are no less formidable" when the defendant, rather than the state, improperly excludes jurors. (*Ibid.*)

In this case, defendant cannot satisfy the first and second criteria of the standing analysis discussed in *Powers* and *McCollum.* Defendant did not suffer a cognizable injury because *he was tried by a jury of his own choosing.* Therefore, the composition of the jury gives defendant no reason to doubt the fairness of the proceeding. Nor does defendant have a close relation to the excluded jurors because defendant himself caused the violation of the excluded jurors' equal protection rights. Thus, it cannot be said, as it was in *Powers,* that the excluded jurors and defendant "have a common interest in eliminating racial discrimination from the courtroom" (*Powers, supra,* 499 U.S. at p. 413 [111 S.Ct. at p. 1372]) because defendant, by committing the discrimination at issue, had no such interest.

Because defendant cannot satisfy these criteria, he does not have standing to assert the excluded jurors' constitutional rights in this case. And because he does not have standing to assert those rights, the *Tapia* court's conclusion that the invited error doctrine does not preclude a defendant from raising a *Wheeler* error does not apply in this case. Therefore, we hold that defendant

cannot assert *Wheeler* error on appeal when that error is based upon his own counsel's improper exercise of peremptory challenges to exclude a legally cognizable group.

Our resolution of defendant's assertion of error under *Wheeler* also resolves defendant's assertion of error under the federal Constitution, because, as noted above, "essentially the same standard applies" under either California law or federal law. (See *People v. Catlin, supra,* 26 Cal.4th at p. 117, fn. 4.)

C.-F.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

One of the two prior prison term enhancements imposed under Penal Code section 667.5, subdivision (b) is stricken, and the judgment is modified to reflect sentences of two concurrent terms of 26 years to life in prison. The clerk of the superior court is directed to prepare an abstract of judgment reflecting the striking of one of the one-year enhancements as described above, and reflecting a total presentence custody credit of 229 days (153 days of actual custody, plus 76 days of conduct credit) and to forward a certified copy of the abstract of judgment to the Department of Corrections. As modified, the judgment is affirmed.

Turner, P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 18, 2003.

---

*See footnote, *ante,* page 402.