Filed 3/6/15

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sutter)

----

| | |
|---|---|
| THE PEOPLE, | C074191 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF11-1759) |
| v. | |
| CHARANDEEP SINGH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sutter County, Brian R. Aronson, Judge.  Affirmed.

Thomas P. Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant Charandeep Singh guilty of felony vandalism, making criminal threats, and assault with a deadly weapon (a baseball bat); it was unable to reach

1

a verdict with respect to counts alleging assault with a gun and brandishing a gun (as to which the trial court stated that it was "prepared" to declare a mistrial, although we do not find any reflection in the minutes of that action). The trial court sentenced defendant to state prison for four years eight months.

Defendant's appeal centers on the prosecution's successful motion contesting the exercise of defense counsel's peremptory challenges as being premised on invidious group bias against Caucasian potential jurors. (As a result, we will omit any account of the facts underlying defendant's convictions.) Defendant does not challenge the nature of the remedy that the trial court imposed (reseating the potential juror who had been the subject of the most recent defense peremptory challenge). Rather, defendant argues that the trial court erred in granting the prosecution's motion, and further that this erroneous grant of the motion—coupled with a threat to impose sanctions against defense counsel for any further improper peremptory challenges—chilled his trial counsel's advocacy during the rest of voir dire and accordingly resulted in an unfair trial. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

After the initial voir dire of the original 18 prospective jurors (12 in the jury box and six seated in chairs in front of it), the parties stipulated to excusing a number of them for hardship or cause, and exercised four peremptory challenges. The trial court seated additional prospective jurors. After the parties stipulated to four more excusals for cause, Juror No. 416024 was among the replacements.

There was scant voir dire of Juror No. 416024. She had read "a little bit in the paper" about the case; she worked as a mechanic, was married (to a mill foreman), and had an adult daughter in nursing school. She had never served previously on a jury. She had been the victim of burglaries of her home (25 years ago) and her cars (twice in the past five years); the police had not apprehended anyone or recovered the property. This

2

did not make her any more likely to convict defendant if she were otherwise not convinced of his guilt, and she would not mind having someone of her mindset sitting in judgment of her.

There was also brief voir dire of Juror No. 439656, who revealed that 40 years earlier she had been convicted of assault after a teenager slapped the juror's small child; she paid a fine. She did not believe the experience would affect her deliberations, because she felt she deserved her punishment. Her husband had been a police officer about 50 years earlier (before she met him), which would not affect her evaluation of any police witnesses. She would be comfortable making credibility determinations if presented with conflicting testimony. After she mentioned that her two sons were both in prison, the parties conducted further private voir dire of Juror No. 439656 in chambers. One son had been convicted of burglaries, and the other for drug issues. She felt they both deserved this punishment, and it would not affect the manner in which she evaluated the case against defendant because she did not think that defendant should be punished regardless of his guilt. For reasons not apparent on the record, defense counsel and the trial court believed her responses merited concern short of cause to dismiss her. The trial court also denied a defense challenge for cause to a secretary with (as the trial court found) only an attenuated link to a Yuba County Superior Court judge against whom defense counsel had a standing peremptory challenge (as presiding judge she had convened a grand jury to indict him while he was pursuing an appointment to the Yuba County bench that she did not support (see *Santana v. Superior Court* (May 16, 2012, C066008) [nonpub. opn.] & related cases [issuing peremptory writ directing superior court to grant motion setting aside indictment]).

Reconvening in open court, the prosecutor exercised a peremptory challenge to one prospective juror and thereafter passed the jury for cause. Defense counsel first excused the secretary, and then five additional prospective jurors; the last of these was

3

Juror No. 416024. During the course of these challenges, the prosecutor requested a sidebar conference. After the challenge to Juror No. 416024, the prosecutor again asked to address the court outside the jury's presence. The court asked Juror No. 416024 to remain in the courtroom while it conferred with counsel in chambers.

The prosecutor observed that defense counsel had exercised these peremptories solely against Caucasians and not against any seated prospective jurors who did not appear to be Caucasian. "[I]t just seems improbable to me that [defense counsel does not] find[] [any] fault with any of the non-white jurors but has non-race-related reasons for striking the eight that he has." The court stated that it did appear to be true that the subjects of defense counsel's peremptories were all "non-minorities, and I'm not even sure whether that's an accurate terminology anymore, but that's what I will use instead of whites because I don't like that word either." It observed that both race and ethnic origin can be "cognizable groups under the law." It thus concluded that the prosecutor had established a prima facie showing that invidious group bias was the basis for the defense peremptories.

Defense counsel offered justifications for the first seven peremptories. In each instance, the trial court agreed that the justifications at least on their face were neutral (although it did not always agree with defense counsel's evaluation of the prospective jurors).

This left Juror No. 416024. Defense counsel was concerned about her attitude because (as noted above) she was the victim of an unsolved car burglary. Counsel speculated that this possibly could have involved some type of vandalism, which was among the present charges.

Because it was already after 4:30 p.m., the court noted that it would reconvene on the motion on the following day, at which point it would determine (as the prosecution requested) the credibility of the proffered justifications for the challenges: "The trial

4

court has a duty to determine the credibility of the . . . proffered explanations . . . , which is what I will do tomorrow morning." It asked Juror No. 416024 to return as well.[1]

In arguing against the motion, defense counsel pointed out that the jury panel was about 80 to 85 percent Caucasian, and there were six Caucasians seated in the jury box. He also asserted his bona fides as an officer of the court in exercising his peremptories. The court pointed out that the 50-50 split among the seated jurors actually cut against defendant's argument, because that was a much lower proportion than the panel. It did not discount the need for hunches in jury selection, but in applying the close scrutiny necessary when peremptory challenges are contested—particularly when there appeared to be a pattern—it found some of defense counsel's reasons simply to be "disingenuous," specifying in particular the defense peremptories against two men on the basis of their prior experience as jurors. It did not agree that the first, whose prior criminal trial had settled, appeared angry in any respect, merely frustrated at the waste of time. As for the other, who had served on a hung jury, the trial court agreed that he did appear frustrated with the hold-out minority but had also served on two *other* juries that did reach verdicts, for which reason the basis for the challenge "just doesn't seem to me to be a very good reason"[2] because this would neutralize the one unsatisfactory experience. The court did not expressly rule on the credibility of the remaining justifications for the peremptories (including Juror No. 416024).

Having found exclusion based on membership in a cognizable group, the court asked the prosecutor—who wanted to complete the trial promptly because a witness

[1] The trial court never expressly ruled on the justification for excusing Juror No. 416024.

[2] Here and elsewhere the trial court used language couched in terms of whether it *agreed* with the justification for the challenges. This is not a pertinent concern in evaluating a justification for a peremptory. However, in light of the court's explicit statement on the previous day that it would be focusing on credibility, we interpret the language it used in that manner.

would be leaving the area—for his preferred remedy.  At first, the prosecutor did not want to reseat Juror No. 416024, because he was concerned she would hold this against the prosecution.  He asked instead simply to continue with voir dire and the imposition of monetary sanctions in the event of any further impermissible challenges.  The court nonetheless reseated Juror No. 416024 and restored an additional challenge (for a total of three) to defense counsel, stating defense counsel "could exercise [it] against [her] if he wanted to and he would just have to articulate a race-neutral reason."  The court even suggested that her body language was "a little bit more tough than most of the other[s]," and her demeanor after reseating her should be a subject of close scrutiny.

After additional voir dire, the trial court denied defense counsel's challenge to a juror in chambers for cause, although it considered it "a close one."  During the discussion in chambers, the trial court assured defense counsel that he should not hesitate to use his remaining peremptory challenges if he had a proper basis for doing so, noting that it believed a challenge to this last juror would be valid.  The prosecutor pointed out that the six prospective jurors in front of the jury box now subject to voir dire were Caucasian, so the exercise of a peremptory challenge would not raise a suspicion in his mind.  Defense counsel stated he nevertheless felt a chilling effect, because he was concerned the judge would not evaluate jurors in the same way he did.  He continued to express concern with Juror No. 416024, asserting that she had "glared" at him "once or twice."  The court stated that defense counsel should not be reluctant to excuse her on this basis.

Back in open court, defense counsel exercised a peremptory against the subject of his unsuccessful challenge for cause in chambers.  After one more peremptory challenge from the prosecutor, both counsel accepted the jury as constituted.[3]  At the

---

[3] Notably, defense counsel still had two unexercised peremptories.

commencement of trial, defense counsel noted for the record that he would have excused Juror No. 416024 because of the manner in which she had been looking at him. He would also have excused Juror No. 439656 based on the voir dire earlier in chambers that we have noted above. He declined to excuse them out of concern that the court would not sustain the challenges.

## DISCUSSION

### I. General Principles

Ultimately, we do not need to rule on the substance of the trial court's resolution of the prosecution's motion to contest the defense peremptories or the remedy it imposed. (We note here that our summary of the proceedings should not be taken as tacit approval of the manner in which the issue was addressed; e.g., see fns. 1-2, *ante*.) But to give context to this appeal, we will nonetheless briefly note the pertinent principles that govern these motions.

Building upon the state and federal constitutional right to a representative cross-section of the community on a jury, *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*) held that a peremptory challenge rooted in invidious group bias, i.e., a presumption based on the mere status of a prospective juror as a member of a cognizable group rather than any particular specific bias, is subject to objection if the opposing party can make a prima facie case of an inference to this effect. The burden then switches to the proponent of the challenge to establish that it is rooted in a bona fide concern about a bias particular to the juror. (*Id*. at pp. 275-277, 280-281; see *People v. Fuller* (1982) 136 Cal.App.3d 403, 423 & fn. 25 [*Wheeler* requires only a reasonable inference for prima facie showing]; see also *Johnson v. California* (2005) 545 U.S. 162, 168 [162 L.Ed.2d 129, 138] [interpreting *Wheeler* as requiring "more likely than not" standard, which is too strict; only inference is required].) The federal high court subsequently established the same principle as a matter of the federal right to equal protection of a defendant and prospective jurors, as

7

well as the interest of the community at large in fair proceedings. (*Batson v. Kentucky* (1986) 476 U.S. 79, 87 [90 L.Ed.2d 69, 81] (*Batson*); accord, *Powers v. Ohio* (1991) 499 U.S. 400, 406 [113 L.Ed.2d 411, 422] (*Powers*).)

## II. Defendant May Raise This Issue on Appeal

The People contend defendant does not have "standing" to challenge the finding that defense counsel committed a *Wheeler-Batson* violation, and we should accordingly dismiss the appeal. The People misapprehend the nature of their supporting authority.

*People v. Willis* (2002) 27 Cal.4th 811 (*Willis*) is a case focused *not* on the basis for a finding of a *Wheeler-Batson* violation, but on the remedy. It authorized a trial court to craft a remedy (at the moving party's request) *other than* dismissal of the seated juror and the remainder of the panel[4] as prescribed in *Wheeler*, *supra*, 22 Cal.3d at p. 282.[5] (*Willis*, at p. 814.) At the outset of voir dire, the defense counsel had unsuccessfully sought to dismiss the panel as not having a cross-section of minorities representative of the community; during voir dire, the trial court then *twice* determined the defense counsel

---

[4] Although the terms are frequently used interchangeably, the Supreme Court has designated *pool* as the master list of potential jurors assembled from source lists, *venire* as the subgroup of the pool assembled at the courthouse, and *panel* as the subgroup of the venire assigned to a courtroom for voir dire. (*People v. Bell* (1989) 49 Cal.3d 502, 520, fn. 3; cf. Code Civ. Proc., § 194, subds. (e), (g) & (q) [using terms "master list," "pool," and "panel"].) While both *Wheeler* and *Willis* refer to dismissal of the remainder of the "venire," it is clear they mean the *panel* in the courtroom, not all of the jurors at the courthouse.

[5] *Wheeler* itself had posited the possibility of other remedies, but decided to defer the exploration of them for another day. (*Wheeler*, *supra*, 22 Cal.3d at p. 282, fn. 29.) *Batson* eschewed prescribing any remedy for a violation as a matter of federal constitutional law. (*Batson*, *supra*, 476 U.S. at p. 99, fn. 24 [90 L.Ed.2d at p. 90, fn. 24].)

8

was "systematically"[6] excluding Caucasian males with peremptory challenges, and—after input from the prosecutor, who argued that the *Wheeler* remedy would only reward defense counsel with the result he desired—in each instance simply resumed voir dire with the remainder of the panel (also issuing an order subjecting defense counsel to personal monetary sanctions for any further violations). (*Willis*, at pp. 815-816.) "As the present case demonstrates, situations can arise in which the remedy of mistrial and dismissal of the [panel] accomplish nothing more than to reward [the offending party] and postpone trial. Under such circumstances, and with the assent of the [moving] party, the trial court should have the discretion to issue appropriate orders short of outright dismissal of the remaining jury, including assessment of sanctions against [the offending party] . . . and reseating any improperly [challenged] jurors if they are [still] available . . . ." (*Id*. at p. 821.)

*Willis* rejected the defendant's claim that anything other than the *Wheeler* remedy violated *Wheeler*'s core concern with a representative cross-section; *Willis* stated that it would be "anomalous" to allow the party who "*caused* the unrepresentative jury" to complain about it on appeal. (*Willis*, *supra*, 27 Cal.4th at p. 822, italics added.)[7] Because it is a violation of the *prosecutor's* right to a jury that is a representative cross-section of the community, the complaining party's choice of remedy was not subject to the defendant's challenge. (*Willis*, at pp. 822-823.) A prosecutor's choice to waive the *Wheeler* remedy also did not run afoul of *Batson*'s focus on the rights of disqualified

---

[6] This is a frequent judicial malapropism; in its technical sense, this refers only to the lack of representation of cognizable groups in a *venire*, not a panel. (*People v. Fuentes* (1991) 54 Cal.3d 707, 716, fn. 4.)

[7] Although this would sound at first blush as if *Willis* were imposing a species of invited error, it later stated "we find it unnecessary to reach [the claim] . . . that defendant, who exercised the improper challenges at issue, . . . should be deemed to have invited any error in allowing that jury to try his case." (*Willis*, *supra*, 27 Cal.4th at p. 824; see also *id*. at p. 817 [citing dissent in underlying appellate court opinion].)

jurors to equal protection in voir dire, because in some instances those jurors might be reseated and in any event dismissal of the remaining panel "does little to vindicate the rights of those excluded." (*Willis*, at p. 823.)

*People v. Morris* (2003) 107 Cal.App.4th 402 (*Morris*) is another case that does not address the substantive basis for a finding of a *Wheeler-Batson* violation. The trial court found defense counsel had been exercising challenges to Caucasian males on the basis of invidious group bias. However, it rejected the prosecutor's express request for the *Wheeler* remedy and simply proceeded with voir dire. (*Morris*, at p. 409.) *Morris* agreed the prosecutor's lack of consent rendered the court's inaction a violation of both *Wheeler* and *Willis*. (*Morris*, at p. 411.) However, the appellate court concluded this violation of the *prosecutor's* right was not for *the defendant* to raise on appeal. (*Id*. at pp. 413-414.) It based its analysis on the reasoning in *Powers*, *supra*, 499 U.S. at page 415, which accorded a Caucasian defendant "standing" to raise the equal protection claims of excluded jurors and the community at large based on a prosecutor's exercise of peremptories for reasons of racial group bias. (*Morris*, at p. 411.) *Powers* found the defendant had suffered an " 'injury in fact' " and had a "close relation" to the third party, who had a "hindrance" to the assertion of their rights (*Powers*, at p. 411 [cited in *Morris*, at p. 412]); on the basis of these *Powers* criteria, *Georgia v. McCollum* (1992) 505 U.S. 42, 56 [120 L.Ed.2d 33] had accorded the prosecution standing to challenge defense peremptories as being made on the basis of racial group bias. Defendant Morris, by contrast, did not suffer any injury because the jury that tried him was *of his own choosing*, nor did he have any interest in common with jurors *he* excluded on an impermissible basis; as a result, he could not raise error affecting the prosecution on appeal. (*Morris*, at pp. 413-414.)

Whether couched as a form of invited error or considered as part of a standing analysis, what underlies these cases is a defendant's status *as the offending party* whose

10

actions brought about the *remedy* contested on appeal. The considerations in *Willis* and *Morris* do not apply to a defendant who seeks to contest the underlying determination that defense counsel *was* in fact the offending party who is precluded from contesting the remedy on appeal. If the trial court erred in making that determination, then necessarily *any* remedy was unwarranted. Consequently, defendant may raise the issue of the finding that defense counsel committed a *Wheeler-Batson* violation.

### III. Defendant Cannot Establish Prejudice

Defendant disputes whether Caucasians are a cognizable group as defined for purposes either of equal protection (*People v. Garcia* (2000) 77 Cal.App.4th 1269, 1273-1274) or of a representative cross-section of the community (*id*. at pp. 1275-1281 [which found that sexual orientation was cognizable for purposes of the latter]). He also argues the trial court should have abdicated any further effort to gauge the sincerity of his race-neutral justifications for his peremptories because he had articulated a subjective basis that the trial court could not second-guess. We do not need to reach either of these issues because, even if the trial court erred, defendant has failed to establish any resulting prejudice.[8]

---

[8] We observe both are doubtful propositions. Defendant notes only that Caucasians are not a minority group and made up a majority of the panel, and thus "under the facts of the present case" were not a cognizable group. However, he fails to analyze any of the criteria discussed at length in *Garcia* for determining whether a group is cognizable under *Wheeler* (which neither include the factors underlying his argument nor provide for a "case-specific" cognizable status), or the People's federal authority that holds it is not permissible to challenge Caucasian jurors on the basis of race (even to obtain a more racially representative jury). He also fails to acknowledge that even though a subjective noninvidious bias is *permissible*, the trial court nonetheless has discretion to assess how reasonable or plausible a justification based on it may be under accepted trial strategies in determining whether it is *genuine*. (*People v. Lenix* (2008) 44 Cal.4th 602, 613; *People v. Allen* (2004) 115 Cal.App.4th 542, 552-553 ["vacuous" justification for peremptory not credible].) Defendant's claim that a subjective basis cannot be gainsaid would all but insulate peremptories from review.

11

In both *Ross v. Oklahoma* (1988) 487 U.S. 81 [101 L.Ed.2d 80] and *Rivera v. Illinois* (2009) 556 U.S. 148 [173 L.Ed.2d 320] (*Rivera*), the Supreme Court made clear that while a defendant has a federal constitutional right to a fair and impartial fact finder at trial, peremptory challenges are not themselves a constitutionally protected component of this right; they are merely a *means* of achieving that end, albeit one that is of primary importance. Thus, the use of a peremptory challenge to remedy an erroneous denial of a challenge for cause does not infringe on the constitutional right to a fair trial. (*Ross*, at pp. 88-89 [also noting due process violated only where defendant *does not receive* full number of peremptories allowed under state law, as opposed to devoting peremptories to the end of correcting erroneous denial of challenges for cause]; accord, *People v. Black* (2014) 58 Cal.4th 912 (*Black*).) Similarly, the erroneous overruling of a peremptory challenge (pursuant to *Batson*) is not a structural violation of a defendant's right to due process under the federal Constitution requiring reversal without a showing of prejudice, and states are free as a result to determine the effect of such error as a matter of state law. (*Rivera*, *supra*, 556 U.S. at pp. 157, 160-161 [noting structural error exists only where it results in trial that is fundamentally unfair, or unreliable factfinding].)

Under the California Supreme Court's approach, structural error exists only in a very *limited* class of cases (generally involving an impingement on the right to counsel or self-representation, bias on the part of the court or jury, a defective instruction on reasonable doubt, the denial of a public trial, and an erroneous *denial* of a *Wheeler-Batson* motion) in which the error has the effect of rendering the factfinding process unreliable, or causing the trial to be fundamentally unfair. (*People v. Mil* (2012) 53 Cal.4th 400, 410.) If, on the other hand, there was adequate legal representation and an absence of any bias on the part of the court or jury, most constitutional errors are subject to our review for prejudice. (*Ibid.*)

12

A recent decision, *State v. Carr* (2014) 300 Kan. 1 [331 P.3d 544] (*Carr*), provides a thorough survey of state and federal decisions on the issue of whether erroneously overruling a peremptory challenge is structural error. (*Id*. at pp. 135-138 [331 P.3d at pp. 638-641].) It did not find cases identifying the error as structural to be persuasive.**9** Like the California Supreme Court, the Kansas Supreme Court's developing view on harmless error finds the "vast majority" of error subject to review for prejudice. (*Id*. at p. 139 [331 P.3d at p. 641].) Because it is the constitutional right to an impartial jury at trial that is at issue, and the inclusion of a juror who is competent and unbiased does not impair that right (even if the juror is personally objectionable to the defendant), it is not a structural error, nor can a defendant ordinarily establish any prejudice from the error. (*Ibid*.)

Absent structural error, it is the well-established California rule in both civil and criminal appeals that the judgment is *presumed correct*, and a record silent on a point cannot overcome this presumption. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) As a result, it is not enough for an appellant to identify an error in the proceedings in the trial court without *affirmatively* establishing "how the error caused a miscarriage of justice." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106, cited in *People v. Nero* (2010) 181 Cal.App.4th 504, 510, fn. 11 [codefendant cannot join in assertion of error without establishing prejudice to self]). Mere s*peculations* of prejudice are insufficient to carry this burden. (*People v. Ayala* (2000) 24 Cal.4th 243, 267 [not proper to reverse based on speculations that there *might* have been comparative juror information that *would have* undermined finding of genuine proper basis for peremptory].)

---

**9** Included in these cases is an unpublished California decision (*People v. Gonzales* (Feb. 8, 2012, B224397)), which is not a precedent under California law.

13

As we agree that an error in overruling a peremptory does not result in any fundamental unfairness, or interference with the reliability of the jury's factfinding function, we conclude it is not structural and therefore a defendant must affirmatively demonstrate prejudice. We are not persuaded that the difficulty in *establishing* prejudice from the inclusion of a merely objectionable juror in deliberations (a theme running through the cases identified in *Carr, supra*, 300 Kan. at pp. 134-135 [331 P.3d at p. 639]; e.g., *State v. Mootz* (Ia. 2012) 808 N.W.2d 207, 225 [concluding this results in a wrong without a remedy]) is a sufficient reason for automatic reversal. *Rivera* specifically rejected this argument as a matter of federal law (*Rivera*, *supra*, 556 U.S. at p. 157 [this argument "do[es] not withstand scrutiny"]), and also noted that a rule of reversal per se would have the result of "discourag[ing] trial courts and prosecutors from policing a criminal defendant's discriminatory use of peremptory challenges." (*Id*. at p. 160.) We share this concern.

Defendant relies on *Wheeler*'s description of a *failure* to conduct an adequate review before *sustaining* a contested peremptory as being error that is reversible per se. (*Wheeler*, *supra*, 22 Cal.3d at p. 283; see *People v. Johnson* (1989) 47 Cal.3d 1194, 1285.) However, *Wheeler* error is *structural* because it is impossible to determine the effect on the trial of a "[juror] who [was not] there"[10] where a trial court sustained a possibly impermissible peremptory.[11] Ordinary *Wheeler* error also puts the judicial system in the untoward place of countenancing invidious discrimination, even if there were no prejudice to the particular

---

[10] Hughes Mearns (1899) "Antigonish."

[11] In contrast, there is *People v. Rodriguez* (1996) 50 Cal.App.4th 1013, 1035, where the court failed to dismiss the panel after the grant of a *Wheeler* motion (as was then considered to be the prescribed remedy pre-*Willis*) and reseated an alternate juror instead, who never sat on the jury; as it is *possible* to determine the absence of any prejudice in such a context (unlike a wrongfully excluded juror), the error was not structural and the principle of harmless error could apply.

defendant. In the context of a successful prosecution *Wheeler* challenge, if an objectionable juror in fact acted in any manner during deliberations that is *inconsistent* with an unbiased fact finder, a defendant can seek redress on that basis.

As noted above, *Black*, *supra*, 58 Cal.4th 912 recently came to the same conclusion as *Ross*. A properly preserved claim that a trial court erroneously limited a defendant's free exercise of peremptories and thereby caused the participation of a juror whom the defendant found objectionable (as the result of erroneous denials of challenges for cause that taxed his full complement)[12] is not reversible error absent a showing that the defendant's right to an impartial jury was thereby affected; this requires a showing that the juror was either biased or otherwise properly subject to a challenge for *cause*. (*Id*. at pp. 914, 916-917, 920.) It is insufficient if the juror is merely objectionable for lawful reasons not amounting to cause. (*Id*. at pp. 919, 920 [rejecting an earlier Supreme Court dictum and a sister state holding to the contrary].)

The present context is analogous to *Black*. Instead of complaining that the trial court forced him to *exhaust* the defense peremptories erroneously, defendant asserts the erroneous overruling of his peremptory and the threat of sanctions chilled any *further* exercise of defense peremptories, resulting in the seating of objectionable Juror Nos. 416024 and 439656. This is the *only* claimed prejudice. However, under *Black*, defendant must demonstrate either bias or other grounds for a challenge for cause on the part of either juror in order to establish the necessary prejudice for reversal. Of themselves, the purportedly

---

**12** This requires the exhaustion of peremptories (or a valid justification for the failure to do so), and an objection in the trial court to the jury as finally constituted. (*Black*, *supra*, 58 Cal.4th at pp. 918, 920, fn. 3.) Arguably, defendant fails to satisfy these prerequisites in the present case, as we do not find his hesitation to exhaust his remaining challenges to be reasonable (fn. 13, *post*). However, given the categorical absence of prejudice in this situation, we dispose of the issue on its merits.

erroneous *Wheeler-Batson* ruling, the threat of sanctions,[13] and the seating of the objectionable jurors are not sufficient to entitle him to reversal. As defendant has thus failed to provide a demonstration of the necessary prejudice, we do not need to resolve whether the trial court's actions were indeed erroneous.

**DISPOSITION**

The judgment is affirmed. (***CERTIFIED FOR PUBLICATION***)


                                            BUTZ            , J.


We concur:


    RAYE           , P. J.


    DUARTE        , J.

---

[13] Our resolution moots the issue of the purported chilling effect of the sanctions on the exercise of further peremptories. We note, however, that this is an inadequate claim of error on myriad bases: First, *Willis* expressly endorsed the imposition of sanctions as a remedy, and thus necessarily any chilling effect. Second, as the People point out, the duty of zealous advocacy on behalf of a client is limited to *lawful* behavior, and thus sanctions for *unlawful* peremptories does not impede counsel's representation. (*People v. Boulden* (2005) 126 Cal.App.4th 1305, 1314.) Counsel has the remedy of appeal for erroneously imposed sanctions. (*People v. Muhammad* (2003) 108 Cal.App.4th 313, 319.) Finally, given the colloquies quoted above between defense counsel, the trial court, and the prosecutor, nothing in the present circumstances indicated unwarranted pressure on defense counsel to refrain from further exercise of peremptories; indeed, both the trial court and the prosecutor assured defense counsel he should not hesitate to exercise his remaining peremptories.